**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JILL DAY,

                Petitioner,                Case Number: 2:14-CV-14778
                                        HONORABLE NANCY G. EDMUNDS

v.

MILLICENT WARREN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY IN PART

Petitioner Jill Day, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through counsel. She challenges her convictions for assault with intent to commit murder and felony firearm.

The petition raises five claims: (i) insufficient evidence supports Petitioner's conviction for assault with intent to commit murder; (ii) the admission of irrelevant, prejudicial evidence and irrelevant opinion testimony denied Petitioner her right to a fair trial; (iii) the prosecutor committed misconduct by discussing facts not in evidence and eliciting improper opinion testimony; (iv) Petitioner was denied her right to a fair and impartial jury when the jury panel viewed her in restraints; and (v) defense counsel was ineffective. For the reasons explained below, the Court denies the petition. The Court grants a certificate of appealability in part.

# I. Facts

The Michigan Court of Appeals provided this overview of the circumstances leading

to Petitioner's convictions:

> The victim, Steven Podschwit, was shot at six times in his driveway while
> trying to leave for work early one morning. Two bullets hit him in the chest
> and arm. He testified that he witnessed a dark-colored minivan slowly
> drive by after the shooting. Other witnesses also reported seeing a dark
> blue minivan in the driveway of a house next to the victim's home. The
> police determined that defendant drove a dark blue Honda Odyssey minivan
> and owned a .45 caliber handgun. However, the police could not locate the
> handgun and defendant could not provide an explanation as to where it
> could be. When the police searched defendant's house they found targets
> used for shooting practice; defendant had visited the shooting range a week
> before the incident. Moreover, the police found a torn photograph of the
> victim's house and driveway in defendant's house. The victim testified that
> he was receiving blocked phone calls from someone prior to the incident.
> These phone calls were traced to a phone number for a prepaid cell phone
> for which defendant had phone cards. The victim's ex-wife also testified
> that she received a phone call from a female inquiring about the victim's
> address and work location. The police were able to determine that this
> phone call came from the same prepaid cell phone. The jury convicted
> defendant of assault with intent to murder and felony-firearm.

*People v. Day*, No. 306104, 2012 WL 6604704 (Mich. Ct. App. Dec. 18, 2012). Also

relevant to the case is the relationship among several individuals: Steven Podschwit, Guy

Fisher (Guy), Nicole Fisher (Nicole), and the Petitioner. After being shot, Podschwit told

police that he thought Guy might be the shooter because Guy previously accused

Podschwit of having an affair with Guy's wife, Nicole. ECF No. 4-6, Pg. ID 560-62. Guy

admitted to his wife Nicole that he had an extramarital affair with Petitioner. ECF No. 4-

7, Pg ID 713. Nicole and Guy Fisher owed Petitioner over $110,000, a debt that had

accumulated over a period of years. The Court addresses additional relevant testimony

below.

## II. Procedural History

Petitioner was convicted by a jury in St. Clair County Circuit Court of assault with intent to commit murder and felony firearm. She was sentenced on August 19, 2011, to 15 to 50 years for the assault conviction, to be served consecutively to two years for the felony-firearm conviction. Petitioner filed a motion for new trial on the ground that the verdict was against the great weight of the evidence. The trial court denied the motion. (ECF No. 4-14).

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claims: (i) the verdict was against the great weight of the evidence and insufficient evidence supported the convictions; (ii) the prosecutor was improperly permitted to admit irrelevant, highly prejudicial evidence and to elicit opinion testimony; (iii) prosecutor committed misconduct by discussing facts not in evidence and eliciting improper opinion testimony; (iv) Petitioner was denied right to a fair and impartial jury when the jury viewed her in restraints; and (v) ineffective assistance of counsel. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Day,* No. 306104, 2012 WL 6604704 (Mich. Ct. App. Dec. 18, 2012).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The application was denied. *People v. Day*, 836 N.W.2d 688 (Mich. 2013).

Petitioner then filed this petition for a writ of habeas corpus. She raises these

claims:

I.      The evidence is insufficient to sustain Petitioner Day's conviction for assault with the intent to commit murder and therefore it would be a denial of due process and a denial of Ms. Day's federal constitutional right to be free from conviction in the absence of proof beyond a reasonable doubt to allow Ms. Day's conviction to stand.

II.     Petitioner Day was denied her due process right to a fair trial under the federal constitution when the prosecutor was permitted to admit irrelevant, but highly prejudicial evidence, as well as elicit irrelevant opinion testimony regarding the evidence in an improper attempt to bolster the state's case.

III.    Ms. Day was denied her due process right to a fair trial under the federal constitution when the prosecutor engaged in severe outcome-determinative misconduct by discussing facts not in evidence and repeatedly eliciting improper opinion testimony.

IV.    Petitioner was denied her federal constitutional right to a fair and impartial jury where the jury panel impermissibly viewed her in restraints.

V.     Petitioner was denied the effective assistance of counsel guaranteed by the federal constitution where her trial attorney, with no strategic purpose, made several outcome-determinative errors.

### III.  Standard

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the

following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

# IV. Discussion

## A.  Sufficiency of the Evidence (Claim I)

Petitioner claims that insufficient evidence was offered to prove beyond a reasonable doubt that she is guilty of assault with intent to commit murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson*, 443 U.S. at 319.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (Mich. 1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). The intent to kill may be proven by inference from circumstantial evidence. *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998).

The Michigan Court of Appeals cited the correct legal standard and held that sufficient evidence was presented to sustain Petitioner's conviction:

> The victim was shot at six times with a .45 caliber handgun, and a dark blue minivan was seen near the scene. Defendant owned a .45 caliber handgun and she drove a blue minivan. Police found targets used for shooting practice at defendant's house, and defendant had visited that shooting range a week before the incident. The victim testified that he received blocked phone calls from someone prior to the incident, which police discovered were from a prepaid cell phone for which defendant had phone cards. Lastly, an intent to kill can be inferred from the use of a dangerous weapon. *See People v. Dumas*, 454 Mich. 390, 403; 563 N.W.2d 31 (1997). There was sufficient evidence from which a rational trier of fact could determine beyond a reasonable doubt that defendant committed assault with intent to murder.

*Day*, 2012 WL 6604704 at *2.

Petitioner argues that the evidence was insufficient because no physical evidence linked her to the crime; her .45 caliber handgun was never found and an expert witness in tool mark and firearms could not link the casings found at the scene of the shooting to casings found at Petitioner's home. Petitioner also notes that eyewitness testimony about the type of vehicle seen near the shooting was inconsistent and no physical evidence was found in Petitioner's vehicle, such as gunshot residue. Petitioner argues that the phone

evidence also did not support her guilt because, although Petitioner had prepaid phone cards for the phone used to make calls to the victim, no showing was made that Petitioner possessed the phone at the time the calls were made. Petitioner argues that much of the remaining evidence could be given an innocuous explanation as easily as an inculpatory one.

Petitioner's argument essentially asks the Court to reweigh the evidence and to come to a different conclusion than that reached by the jury. This is not the Court's role on habeas review. The Court does not "rely simply upon [its] own personal conceptions of what evidentiary showings would be sufficient to convince [the Court] of the petitioner's guilt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Instead, the Court asks whether the Michigan Court of Appeals "was unreasonable in *its* conclusion that a rational trier of fact could find [Petitioner] guilty beyond a reasonable doubt based upon the evidence presented at trial." *Id.* citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question 'is not whether a federal court believes the state court's determination ... was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"), quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Further, "circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Hill v. Mitchell*, 842 F.3d 910, 934 (6th Cir. 2016) (internal quotation omitted). *See also Gipson v. Sheldon*, 659 Fed. App'x 871, 881 (6th Cir. 2016) ("[C]ircumstantial evidence ... is intrinsically no

different from testimonial evidence and that is sufficient as long as the jury is convinced beyond a reasonable doubt.") (internal quotation omitted).

In addition to the evidence noted by the Michigan Court of Appeals, the jury also heard evidence that an unidentified female called the victim's place of employment and his ex-wife in the days prior to the shooting attempting to locate the victim. Police executed search warrants at Petitioner's home and found, among other items, a phone card with the word "Capac" written on it (the town where the victim's home was located), a torn up picture of the victim's home and driveway, a black holster designed to be worn concealed inside of a person's pants, a trash bag containing a box for binoculars and a license plate cover (supporting a finding of an attempt at covert surveillance), and a receipt indicating the binoculars were purchased less than a week before the shooting. A credit card statement located in Petitioner's home revealed a purchase from Intelius, an online search engine. Intelius' records showed that the purchase was made to attempt to find an address associated with Steven Podschwit's phone number.

"A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), quoting *Jackson*, 443 U.S. at 326. The evidence against Petitioner, though circumstantial, was sufficient for a reasonable trier of fact to find the essential elements of Petitioner's crime proven beyond a reasonable doubt. It was not unreasonable for the state court to conclude that, weighing

all reasonable inferences in the State's favor, there was legally sufficient evidence presented to support Petitioner's conviction. Accordingly, habeas relief is denied on this claim.

## B. Admission of Evidence (Claim II)

In her second claim, Petitioner argues that her due process right to a fair trial was violated by the admission of irrelevant, highly prejudicial evidence and irrelevant opinion testimony regarding the evidence.

Respondent argues that the portion of this claim addressing opinion evidence is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

Petitioner argues that a great deal of irrelevant and highly prejudicial evidence was improperly admitted and that its admission violated her right to a fair trial. One of the pieces of evidence identified by Petitioner as most troublesome is a black hoodie seized from her home. Petitioner also identifies the following additional evidence and testimony as improperly admitted:

- A bullet fragment found near the scene of the crime;

- These items seized from Guy Fisher's home: four laptop computers, a tire gauge, a knife, and a samurai sword;

- Contents of photographs taken of Guy Fisher's vehicles;

- A notebook seized from the Petitioner's home;

- These items seized from Petitioner's home: a receipt for 200 minutes from Net Ten which was activated to a track phone bearing the number 205-305-8885 on October 24, 2010, and a ledger which indicated that Guy and Nicole Fisher owed Petitioner $117,000;

- DNA and fingerprint testimony which, Petitioner argues, ultimately did not link Petitioner in any way to the crime;

- Testimony regarding suspicious activity near Guy Fisher's home and Nicole Fisher's parents' home in the days after the shooting; and

- Testimony that Petitioner received a traffic ticket near Guy Fisher's home a few weeks after the shooting.

Petitioner contends that this evidence was irrelevant and highly prejudicial and that it confused the jury and obfuscated the fact that the prosecution lacked evidence to prove she committed the crime.

The standard for habeas relief for state court evidentiary rulings is "not easily met." *Wilson v. Sheldon*, — F.3d —. 2017 WL 4820300, *3 (6th Cir. Oct. 26, 2017). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). If an evidentiary ruling is

"especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Wilson*, — F.3d at —, 2017 WL 4820300 at *3, quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). But the state retains "wide latitude with regard to evidentiary matters under the Due Process Clause." *Id.,* citing *Seymour*, 224 F.3d at 552.

Here, the Michigan Court of Appeals founds no error in the trial court's admission of this testimony. The state court of appeals found that the evidence was relevant because it "had some tendency to make the existence of a material fact more or less probable." *Day*, 2012 WL 6604704 at *3. The record supports the Michigan Court of Appeals' holding. First, regarding the hoodie sweatshirt seized from Petitioner's home, Lori Hackelberg lived near Steven Podschwit and was walking her dog at the time of the shooting. She heard several gunshots and then saw someone wearing a dark shirt or jacket running toward a dark-colored van. ECF No. 4-7, Pg. ID 655. Podschwit also described the person as being a dark figure, although he did not specifically identify a particular piece of clothing. Thus, it was reasonable for the trial court to admit testimony that a dark-colored sweatshirt was seized from Petitioner's home. Ultimately, the defense was able to rebut the hoodie's relevance because police failed to test it for any gunshot residue. The testimony regarding the evidence recovered from Guy Fisher's and Petitioner's houses was relevant to the course of the investigation. The testimony helped to explain how the investigation turned from focusing on Guy Fisher as a suspect to focusing on Petitioner. The ledger detailing money owed to Petitioner by Guy and Nicole

13

Fisher was relevant to potential motives for the shooting and to the complex relationship among Guy, Nicole, and Petitioner. The evidence of a prepaid phone card was clearly relevant to show Petitioner's connection to the phone number from which the suspicious calls seeking the victim's location were made. The DNA and fingerprint evidence were relevant to show the course of the investigation and its thoroughness. In short, in a case resting upon circumstantial evidence, it was natural for the prosecutor to carefully set forth for the jury the building blocks upon which the case against Petitioner was based.

Certainly, some of the exchanges detailing the gathering and logging of evidence were tedious and exhaustive. But the testimony explained the unfolding police investigation and, under the "extremely limited" review of state evidentiary rulings on habeas review, the Court finds no error implicating Petitioner's right to due process in the admission of this evidence. *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006).

Petitioner also challenges the elicitation of opinion testimony from police officers reflecting upon the value of the evidence collected. As an initial matter, Petitioner argues that this issue should be reviewed *de novo* because, although the issue was properly presented, the Michigan Court of Appeals failed to address the merits of the claim. Respondent argues that the claim is procedurally defaulted because the Michigan Court of Appeals declined to address the merits on the ground that the issue was not presented in accordance with state court rules. The Court need not decide this issue because even under a *de novo* standard of review the claim fails.

Petitioner objects to the prosecutor's occasional use of the phrase "why was that important" when asking police witnesses about various pieces of evidence because, Petitioner argues, the prosecutor was improperly eliciting opinion testimony. For example, Petitioner objects to the following exchange between the prosecutor and police sergeant James Spadafore regarding the black sweatshirt:

Q:     And did you continue searching in that closet area [in Petitioner's home]?

A:     I did.

Q:     And did you locate anything else that was important for you in this investigation and things that you were searching for?

A:     Yeah. I found a piece of clothing, I think, like a black hoodie.

Q:     Okay. And why was that important?

A:     It was mentioned to me that they were looking for clothing, particularly some type of black hoodie that might have been worn by the person they were looking for.

Q:     And when you found that hoodie, did you retrieve it or take it off a hanger or anything of that nature?

A:     I believe I saw it hanging there. Looked at it briefly and then I let Detective Patterson come and photograph it and take it.

Q:     And so all that you did was locate it, pinpoint to an evidence technician and say, I think this is what you are looking for?

A:     Correct.

(ECF No. 4-8, Pg. ID 912-13).

She also objects to questioning of police lieutenant Matthew Paulus. Lieutenant Paulus testified that when he searched the Fisher home he located paperwork related to a

Chrysler Town & Country minivan.  The prosecution asked "why was that important to the investigation?"  *Id.* at 922.  Lieutenant Paulas explained that a witness had observed a minivan shortly after the shooting and the information was relevant on that basis.  *Id.*  The prosecution also asked Lieutenant Paulas if he located anything in the garage area of Petitioner's home "that was important for you as it relates to this investigation."  *Id.* at 928.  Lieutenant Paulas responded that he found "a bag of ashes with a box for a pair of binoculars."  *Id.* at 929.

Detective David Patterson testified that when searching Petitioner's house he found a "declaration of love for Guy Fisher."  *Id.* at 946.  Detective Patterson testified that this was of evidentiary value because he was trying to determine the nature of any relationship between Petitioner and Guy Fisher.  *Id.*  The prosecution also asked Detective Patterson if, when searching Petitioner's vehicle, he found anything "that was of importance for you in this investigation."  *Id.* at 969.  Detective Patterson replied that he found a map of St. Clair County with areas of roads highlighted.  *Id.*  The areas of road highlighted "jumped out at" Detective Patterson because it was the location where Nicole Fisher's parents lived and where she had been staying for her safety.  *Id.* at 971.

Finally, the prosecution asked detective Colleen Titus whether anything she found in a tote bag in Petitioner's car was "important or of evidentiary value to you in this investigation."  ECF No. 4-9, (tr. pg. 95).  Detective Titus replied, "Yes, there were a new

ledger book and some other notation in another book that were being transferred into the next pages."[1] *Id.*

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir.1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287. In contrast, in this case, no witness was asked to give an opinion about Petitioner's guilt or innocence. Instead, the officers were simply explaining the course of the investigation that resulted in the charges against Petitioner. The particular phrasing used by the prosecutor in questioning police about evidence gathered did not render the responses improper opinion testimony. In addition, The jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. ECF No. 4-11, Pg. ID 1492. Petitioner was not denied a fair trial as a result of this testimony.

---

[1] Petitioner cites an additional transcript page as containing the same type of allegedly improper opinion evidence, Tr. IV at 88. The Court finds no questions or responses on that transcript page which could be construed as falling within the type of questions challenged by Petitioner.

## C.  Prosecutorial Misconduct Claim (Claim III)

Petitioner next seeks habeas relief on the ground that the prosecutor committed flagrant misconduct which "was so pronounced and persistent that it permeated the entire atmosphere of the trial" when she asked police witnesses why certain pieces of evidence were relevant to their investigations.  ECF No. 1, Pg. ID 62.  Petitioner fails to show that the prosecutor committed *any* misconduct and certainly none that would rise to the level of a denial of due process.[2]

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 567 U.S. 37, —, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.*, quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Parker, 567 U.S. at —, 132 S. Ct. at 2155, quoting *Harrington*, 562 U.S. at 103.

---

[2]  Respondent argues that this claim and Petitioner's ineffective assistance of counsel claim are procedurally defaulted.  The Court finds that the interests of judicial economy are best-served by proceeding to the merits of these claims.  *See Lambrix*, 520 U.S. at 525.

The Michigan Court of Appeals found no misconduct. *Day*, 2012 WL 6604704 at

*4. The state court held that the challenged testimony was relevant and therefore there

was no misconduct in the prosecutor's eliciting that testimony. *Id.* The state court further

denied Petitioner's claim that the cumulative impact of the prosecutor's numerous

instances of misconduct denied her a fair trial because no errors were found. *Id.* As

discussed above, Petitioner has not shown any error in the admission of evidence or

testimony. Therefore, the Michigan Court of Appeals' opinion rejecting Petitioner's

claim was not contrary to, or an unreasonable application of, *Darden*. Habeas relief is

denied on this claim.

### D. Petitioner in Restraints (Claim IV)

Petitioner next claims that she was denied her right to a fair and impartial jury

because the jury panel impermissibly viewed her in restraints. She maintains that the

Michigan Court of Appeals' opinion denying this claim is an unreasonable application of

the Supreme Court's decision in *Deck v. Missouri*, 544 U.S. 622 (2005).

During juror *voir dire*, defense counsel made the following remark:

> [W]hen my one client came in court today, she came in here in the company
> of deputies. Some of you in the hallway probably saw that she was
> handcuffed and shackled. ... And typically, you are not supposed to see my
> client in handcuffs but I realize some of you did and that's why I'm
> bringing it up now.

ECF No. 4-6, Pg. ID 443.

The Michigan Court of Appeals denied this claim on two grounds. First, the state

court held that the cited portion of the record did not establish that any jurors *actually*

viewed Petitioner in restraints.  *Day*, 2012 WL 6604704 at *5.  Defense counsel stated that the jurors "probably" saw Petitioner in handcuffs and shackles, but defense counsel's supposition was not confirmed either way.  *Id.*  Second, the Michigan Court of Appeals found no error because even assuming that Petitioner was seen in restraints, she was viewed while being transported to court.  *Id.*

In *Deck v. Missouri*, 544 U.S. 622, 629 (2005), the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  *Deck,* however, "concerned only visible restraints at trial. The Supreme Court was careful to repeat this limitation throughout its opinion."  *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008).  "Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things."  *Id.* at 655 citing *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.1991).  "[I]t is *reasonable* for law enforcement officers to transport custodial criminal defendants to and from courthouses across the country with restraints.... And jurors may well *expect* criminal defendants – at least ones charged with the kind of conduct at issue here [assault with intent to commit murder] – to be restrained during transport to the courtroom."  *Id.* (internal quotation marks omitted).

The Supreme Court has not held that a defendant's constitutional rights are violated when jurors see a defendant shackled during transport to and from the courtroom. Therefore, the Michigan Court of Appeals' decision is not contrary to or an unreasonable

application of clearly established Supreme Court precedent.

## E.  Ineffective Assistance of Counsel

Finally, Petitioner argues that she was denied the effective assistance of counsel. Specifically, she alleges that counsel was ineffective for failing to object to: (i) multiple instances of admission of irrelevant evidence; (b) multiple instances of prosecutorial misconduct; and (iii) the jury having viewed Petitioner in restraints.

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984).  A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687.  To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.  In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different.  Id. at 694.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. — , 134 S. Ct. 10, 16 (2013).  The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), quoting *Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the

two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, Petitioner argues that her defense attorney was ineffective in failing to object to the admission of allegedly irrelevant evidence and to the claimed instances of prosecutorial misconduct. The Michigan Court of Appeals found counsel was not ineffective because the evidence was properly admitted and the prosecutor did not commit misconduct. *Day*, 2012 WL 66604704 at *5. This Court agrees. The disputed evidence was relevant to the investigation and the prosecutor's conduct fell far short of constituting misconduct.

Petitioner also argues that her attorney was ineffective in failing to object when the jurors saw her in shackles. The Michigan Court of Appeals held that, even assuming that the jurors did see Petitioner in restraints, counsel was not ineffective in failing to object because "'the prohibition against shackling does not extend to safety precautions taken by officers while transporting a defendant to and from the courtroom.'" *Day*, 2012 WL 6604704 at *6, quoting *People v Horn*, 279 Mich. App. 31, 37 (2008). Defense counsel was aware that the jurors may have seen Petitioner in restraints. He asked the jurors whether anyone would be prejudiced by knowing that Petitioner was in jail while awaiting trial. ECF No. 4-6, Pg. ID 444. He advised jurors that in cases involving serious charges bond is typically very high and defendants often are unable to post bond.

*Id.* at 443.  Defense counsel asked whether any jurors felt that Petitioner was guilty because she was unable to make bond and therefore remained in jail.  *Id.* at 444.  No juror expressed an inability to be fair based upon Petitioner's failure to post bond.  Defense counsel handled the situation reasonably.  Because he was likely aware of case law finding no error where a defendant is seen in restraints while being transported to and from the courtroom, he did not object.  He focused, instead, on the most important issue, whether any juror was negatively impacted by the restraints.  After determining that none had, defense counsel reasonably proceeded with *voir dire*.  Habeas relief is denied on this claim.

## V.  Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability.  To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, Petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); In re Certificates of Appealability, 106 F.3d 1306, 1307 (6th Cir. 1997).

Here, jurists of reason could debate the Court's holding with respect to the sufficiency of the evidence claim. Therefore, the Court grants Petitioner a certificate of appealability as to that issue. The Court finds that reasonable jurists would not debate the Court's conclusions with respect to the remaining claims and denies a certificate of appealability as to those claims.

## VI.  Conclusion

For the reasons stated above, the Court DENIES the petition for a writ of habeas corpus. The Court GRANTS a certificate of appealability on Petitioner's sufficiency of the evidence claim and DENIES a certificate of appealability with respect to the remaining claims.


s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:  11/1/17

CERTIFICATION

I hereby certify that this order was served upon parties and/or counsel of record on this 1st day of November, 2017 by regular U.S. Mail and/or CM/ECF.

s/ Carol J. Bethel
Case Manager